Francisco **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. A14–92–00889–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 9, 1994.

Rehearing Denied June 16, 1994.

Jerry D. Patchen, Henry L. Burkholder, III, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## MAJORITY OPINION

MURPHY, Justice.

Appellant entered a plea of not guilty before the court to the offense of delivery by offer to sell a controlled substance, namely cocaine, weighing at least 400 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992). He was convicted, and the judge assessed punishment at imprisonment for 15 years in the Institutional Division of the Texas Department of Criminal Justice and a $3000.00 fine. Appellant contends there is insufficient evidence to support his conviction for delivery of a *controlled substance,* and that he should have been indicted for the more specific offense of delivery of a *simulated controlled substance. See* TEX. HEALTH & SAFETY CODE ANN. § 482.002 (Vernon 1992). We agree and reverse the judgment.

On August 18, 1991, Julio Ayala told undercover Agent Jack Schumacher that he and several other individuals would sell Schumacher 20 kilograms of cocaine for $310,000. The next day, Schumacher met with Ayala and Gerardo Escamilla at Escamilla's office, where the two men told Schumacher that their "Colombian" source would arrive at the office soon. When appellant arrived, Schumacher was told by Ayala and Escamilla that appellant had the cocaine and Schumacher should go with him to his car and bring the money. At the car, appellant asked to see the money and Schumacher complied with his request. Appellant then allowed Schumacher to look into a black bag which contained numerous brick-shaped packages wrapped in a manner commonly employed to wrap and carry kilos of cocaine. At that point, Schumacher signalled the arrest team, who arrested appellant, Ayala, and Escamilla. When the substance contained in the packages was analyzed, it was not a controlled substance, but was in fact over 400 grams of flour.

Appellant was indicted and convicted under TEX.HEALTH & SAFETY CODE ANN. § 481.-112, which reads in pertinent part:

(a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally ... delivers, or possess with intent to ... deliver a controlled substance listed in Penalty Group 1.

. . . . .

(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) and the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 28 grams or more.

(d) An offense under Subsection (c) is:

. . . . .

(3) punishable by confinement in the Texas Department of Corrections for life or for a term of not more than 99 years or less than 15 years, and a fine not to exceed $250,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more.

The Simulated Controlled Substances Act, TEX.HEALTH & SAFETY CODE ANN. § 482.002 (Vernon 1992), provides:

(a) A person commits an offense if the person knowingly or intentionally ... delivers a simulated controlled substance and the person:

(1) expressly represents the substance to be a controlled substance;

(2) represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) states to the person receiving or intended to receive the simulated controlled substance that the person may successfully represent the substance to be a controlled substance to a third party.

.     .     .     .     .

(d) An offense under this section is a felony of the third degree.

The punishment for a third degree felony is confinement in the Institutional Division of the Texas Department of Criminal Justice for two to ten years or confinement in a community correctional facility for not more than one year, and a fine up to $10,000. TEX.PENAL CODE ANN. § 12.34 (Vernon Supp. 1994).

■■■ The Court of Criminal Appeals has consistently held that where a general statute and a specific statute complete within itself both proscribe a defendant's conduct, he should be charged under the more specific statute. *Cheney v. State,* 755 S.W.2d 123, 127 (Tex.Crim.App.1988); *Williams v. State,* 641 S.W.2d 236, 238 (Tex.Crim.App.1982). This rule is based on the in pari materia rule of statutory construction, which provides that if two statutes deal with the same general subject, have the same general purpose, or relate to the same person or class of persons, they are considered in pari materia and should, wherever possible, be construed together and any conflicts harmonized. *Cheney,* 755 S.W.2d at 126. Another way of stating this rule is where one statute broadly defines an offense, and a second more narrowly describes another offense, complete within itself, which proscribes conduct that would otherwise meet every element of the broader provision, the statutes are in pari materia. *Mills v. State,* 722 S.W.2d 411, 414 (Tex.Crim.App.1986). If there are irreconcilable conflicts between statutes as to elements of proof or penalties for the same conduct, then the more specific statute controls. *Cheney,* 755 S.W.2d at 127; *Williams,* 641 S.W.2d at 239.

■■■ In this case, appellant was charged with delivery of a controlled substance by offer to sell. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992) (defining "deliver" to include offering to sell a con-

trolled substance). In order to establish delivery by offer to sell, proof of such an offer must be corroborated by evidence other than a statement of the offeree, in this case Agent Schumacher. TEX.HEALTH & SAFETY CODE ANN. § 481.183(a) (Vernon 1992). This proof was available against appellant, because the police recorded all of the conversations Schumacher had with appellant, Ayala, and Escamilla. Therefore, appellant was subject to conviction under Section 481.112 for offering to sell a controlled substance.

Section 482.002 applies to delivery of a simulated controlled substance, defined as a substance purported to be a controlled substance that is chemically different than the substance it is purported to be. TEX.HEALTH & SAFETY CODE ANN. § 482.001(4) (Vernon 1992). "Delivery" under Section 482.002 also includes offering to sell a simulated controlled substance. Appellant expressly represented the substance he was delivering to be a controlled substance, cocaine, and also represented that the substance was cocaine by the manner in which it was packaged. He then delivered flour, a substance that is chemically different from cocaine. Thus, he was also subject to conviction under Section 482.002.

Because appellant was subject to conviction under two statutes which carry differing penalties but deal with the same prohibited conduct, offer to sell a controlled substance, we find the two statutes are in pari materia. Our next analysis should ascertain whether one statute more specifically proscribes the particular conduct in which appellant engaged. *Cheney,* 755 S.W.2d at 127. We find that Section 482.002 more specifically describes appellant's conduct, because his actions, as discussed above, *precisely* conform with the description of the offense proscribed by Section 482.002.

The case before us is analogous to *Garza v. State,* 687 S.W.2d 325 (Tex.Crim.App. 1985). In *Garza,* the defendant, the County Treasurer of Maverick County, argued that he should have been prosecuted for official misconduct rather than theft, after he diverted $84,000 in county funds. The official misconduct statute proscribes taking or misapplying anything of value belonging to the

government, while the theft statute specifically includes money in the definition of stolen property, and also varies the punishment based on the amount of money stolen. The court found that although the defendant *could have been prosecuted under either statute,* the misappropriation of funds was "covered by the theft chapter with much greater precision." *Garza,* 687 S.W.2d at 331 (emphasis added). *See also Williams v. State,* 641 S.W.2d 236 (Tex.Crim.App.1982) (finding prosecution under theft statute improper when offense of hindering a secured creditor was the more specific statute); *Ex parte Holbrook,* 606 S.W.2d 925 (Tex.Crim.App. 1980) (stating statute dealing with possession of a forged driver's license controls over the general forgery statute); *and Jones v. State,* 552 S.W.2d 836 (Tex.Crim.App.1977) (holding appellant should have been charged with welfare fraud instead of under more general theft statute).

The State cites *Stewart v. State,* 718 S.W.2d 286 (Tex.Crim.App.1986), for the proposition that an individual need not deliver any controlled substance at all to be found guilty of the offense of delivery of a controlled substance by offer to sell.[1] *Stewart* holds that the offense of delivery by offer to sell a controlled substance is complete when the person offers to sell what he represents to be a controlled substance. We agree, and also agree that appellant was subject to prosecution for delivery of a controlled substance. But that is not the question before us. Rather, we are faced with the question of when a person is subject to prosecution under two statutes, whether the statutes conflict, and if so, whether one more specifically applies to the prohibited conduct at issue.

When *Stewart* was decided, the legislature had not yet enacted Section 482.002, and the only statute then available to the State for prosecution of delivery of a substance purporting to be a controlled substance was the statute prohibiting delivery of a controlled substance by offer to sell. The legislature is never presumed to do a useless

act. *Childress v. State,* 784 S.W.2d 361, 364 (Tex.Crim.App.1990); *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex. 1981). In enacting a statute, it is presumed that the entire statute is intended to be effective, and a just and reasonable result is intended. TEX.GOV'T CODE ANN. § 311.021(2), (3) (Vernon 1988). From the wording of Section 482.002, we presume the legislature intended to prohibit the precise conduct in which appellant engaged, and that it made a determination that this behavior constituted a lesser harm to society than delivery of an actual controlled substance, because the offense of delivery of a simulated controlled substance carries a lesser range of punishment.

In this case, although appellant could have been convicted under either statute, we find that Section 482.002 covers his actions with much greater precision than Section 481.112. Since there are conflicts between the statutes as to elements of proof and penalty provisions, the statutes are in pari materia and appellant should have been charged with the more specific offense of delivery of a simulated controlled substance. *Williams,* 641 S.W.2d at 239.

We reverse the judgment of the trial court and remand with instructions that the indictment be dismissed.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I respectfully file my dissent.

Appellant, Francisco Rodriguez, entered a plea of not guilty before the court to the offense of delivery by offering to sell a controlled substance, namely cocaine, weighing at least 400 grams. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992). He was convicted, and the judge assessed punishment at imprisonment for fifteen (15) years in the Institutional Division of the Texas Department of Criminal Justice and a

---

1. Appellant also cites *Vivanco v. State,* 825 S.W.2d 187 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). We find *Vivanco* distinguishable from the case before us. In *Vivanco,* the defendant delivered 6.48 grams of cocaine along

with a large quantity of flour. Therefore, he actually delivered a controlled substance plus adulterants and dilutants, not simply a simulated controlled substance, and he was not liable for prosecution under Section 482.002.

$3000 fine. Appellant contends there is insufficient evidence to support his conviction for delivery of a *controlled substance*, and that he should have been indicted for the more specific offense of delivery of a *simulated controlled substance*. See TEX. HEALTH & SAFETY CODE ANN. § 482.002 (Vernon 1992). I would affirm the judgment of the trial court.

On August 18, 1991, Julio Ayala told undercover Agent Jack Schumacher that he and several other individuals would sell Schumacher 20 kilograms of cocaine for $310,000. The next day, Schumacher met with Ayala and Gerardo Escamilla at Escamilla's office, where the two men told Schumacher that their "Colombian" source would arrive at the office soon. When appellant arrived, Schumacher was told by Ayala and Escamilla that appellant had the cocaine and Schumacher should go with him to his car and bring the money. At the car, appellant asked to see the money and Schumacher complied with his request. Appellant then allowed Schumacher to look into a black bag which contained numerous brick-shaped packages wrapped in a manner commonly employed to wrap and carry kilos of cocaine. At that point, Schumacher signalled the arrest team, which arrested appellant, Ayala, and Escamilla. When the substance contained in the packages was analyzed, it was not a controlled substance, but was in fact over 400 grams of flour.

In his first and third points of error, appellant claims the evidence is insufficient to support his conviction. He first contends the evidence is insufficient to support a conviction for delivery of controlled substance, because the evidence reveals that he intended to sell a *simulated* controlled substance, rather than a controlled substance. He then argues that his conviction for delivery by offer to sell is not supported by the evidence, because his criminal intent was not corroborated. Both claims are without merit.

### The Standard of Review

The standard of review for a challenge to the sufficiency of the evidence is whether, viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, an appellate court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

A person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 1992).

> "Deliver" means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.

TEX.HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992).

The indictment reads, in pertinent part, as follows:

> [I]n Harris County, Texas, Francisco Rodriguez, hereafter styled the Defendant, heretofore on or about August 19, 1991, did then and there unlawfully, intentionally and knowingly deliver by offering to sell to J. SCHUMACHER, a controlled substance, namely COCAINE, weighing by aggregate weight, including any adulterants and dilutants at least 400 grams.

The trial court found appellant guilty of delivery by offering to sell a controlled substance, as charged in the indictment.

### The Sufficiency of the Evidence to Prove Delivery of a Controlled Substance

Appellant contends that his conviction for delivery of a controlled substance cannot be sustained because he and his co-defendants had no intent to deliver any amount of cocaine. Rather, they intended to defraud the buyer by delivering a substance that only appeared to be cocaine. He thus argues that this offense falls within the provision of the

Simulated Controlled Substances Act. *See* Tex.Health & Safety Code Ann. § 482 (Vernon 1992).

Appellant does not dispute that Ayala and Escamilla offered to sell a controlled substance to Agent Schumacher. Furthermore, he does not contest that he was a party to that offense. He merely claims that the offense committed was not delivery of a controlled substance, but delivery of a simulated controlled substance.

The court of criminal appeals, in analyzing the offense of delivery by offer to sell, explained:

> When actual or constructive delivery is involved, the nature of the substance, usually determined by chemical analysis, is thus necessary of proof. When the prosecution involves delivery "by offer to sell," that element can be met by the representation, by word or deed, that the person has a controlled substance to sell. The chemical properties or indeed, the presence or possession of any substance, is not necessary to the offense.

*Stewart v. State*, 718 S.W.2d 286, 289 (Tex. Crim.App.1986); *Vivanco v. State*, 825 S.W.2d 187, 190–91 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Thus, in order *to commit the offense of delivery by offer to sell a controlled substance, it is not necessary for the defendant to have any substance in his possession at all*—much less an actual controlled substance.

Furthermore, appellant is a party to the offense of delivery by offer to sell, even though he was not present when the offer was made. *Estrada v. State*, 824 S.W.2d 770, 772–73 (Tex.App.—Houston [14th Dist.] 1992, *pet. dism'd, improvidently granted*, 846 S.W.2d 332 (Tex.Crim.App.1993). A person is guilty as a party to an offense if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" Tex.Penal Code Ann. § 7.02(a)(2). In deciding *Estrada*, this court considered the events occurring before, during and after the offense to determine whether appellant acted as a party. *Id.* at 774; *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). More-

over, reliance may be placed on actions which show an understanding and common design to engage in an act. *Moore v. State*, 804 S.W.2d 165, 166 (Tex.App.—Houston [14th Dist.] 1991, no pet.).

Appellant aided in the commission of this offense by arriving at Escamilla's office at the designated time with alleged narcotics in his car. He summoned Agent Schumacher to his vehicle, asked to see the money with which Schumacher was to purchase the drugs, then showed the agent several packages wrapped in the manner that kilogram bricks of cocaine commonly are packaged.

Under the provisions of Tex.Health & Safety Code Ann. § 481.183(a) (Vernon 1992), proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree. Because proof of an offer to sell must be corroborated, the State must present additional evidence other than just the offer to sell. This additional evidence can include for example, the attempted transfer of the substance, the completed transfer of the substance, a recording of the offer to sell, the exhibition or production of the substance, or testimony of the offer to sell by a witness other than the offeree. Thus, the State has the burden to prove corroboration in order to establish the offense of delivery by offer to sell. In this case, corroboration of the offer to sell took place when appellant exhibited the brick-shaped packages to Agent Schumacher. Therefore, the evidence clearly establishes that appellant aided and attempted to aid Ayala and Escamilla in the commission of delivery by offer to sell. I would overrule appellant's first point of error.

Appellant argues in his third point of error that the State failed to sufficiently prove his criminal intent. He contends that such proof is necessary to meet the requirement of section 481.183(a) that an offer be corroborated. He cites *Garber v. State*, 671 S.W.2d 94 (Tex.App.—El Paso 1984, no pet.), for the proposition that the purpose of the corroboration requirement is to insure that the defendant will not be punished for guilty thoughts alone, and to insure that he actually has committed some culpable act.

This court addressed a similar issue in *Vivanco*, 825 S.W.2d at 191–92. After first deciding that the higher standard of corroboration used for accomplice witness testimony does not apply to this type of case, this court went on to say:

In *Stewart* the court of criminal appeals makes it clear that the mere fact that the appellant does not actually deliver the total amount of drugs offered does not render the evidence insufficient to convict ... In *Stewart* the crime was committed by the offer, and the circumstances surrounding the offer are viewed to determine if the offer is corroborated.

*Id.* at 192.

Therefore, the ruling of *Vivanco* instructs us that the delivery of the controlled substance named in the offer does not have to occur in order to for the offer to be corroborated. To the contrary, all circumstances surrounding the offer should be considered in determining if the offer is corroborated.

In this case, the State offered a stipulation of evidence, to which the defense agreed, outlining Ayala and Escamilla's offer to sell Agent Schumacher a large amount of cocaine. The stipulation also outlined appellant's participation in this offense. He arrived at Escamilla's office at the designated time. In his car, appellant had a black bag, which was filled with packages wrapped in the way kilograms of cocaine are usually wrapped. He escorted Agent Schumacher to his car and asked to see the money. Only after the agent showed appellant $260,000 did appellant show Schumacher the contents of the black bag. The purchase price of the cocaine was $310,000. However, Ayala and Escamilla demanded that Schumacher give them $50,000 up front. Thus, when Agent Schumacher went with appellant to his car, he was carrying $260,000. Certainly these acts, which appellant and the State agreed took place, corroborate the existence of the offer to sell. Furthermore, these acts indicate criminal intent on the part of appellant. After all, $260,000 is a very high price for a bag full of flour! Appellant testified at trial that he knew the packages were filled with flour, and he intended to sell the flour for

$310,000. I would overrule appellant's third point of error.

Appellant contends in his second point of error that he should have been charged with the offense of delivery of a simulated controlled substance, rather than delivery by offer to sell a controlled substance. This court addressed and rejected the identical point of error in *Vivanco*, 825 S.W.2d at 187.

The two offenses are not the same, and as the court of criminal appeals explained in *Stewart* the chemical properties of [the] substance actually delivered are not an element of the offense of delivery by offer to sell. They are two different offenses. Each requires proof of different elements for conviction. There was enough evidence presented from which a rational trier of fact could have found appellant guilty of delivery by offer to sell. There is nothing which requires the appellant be convicted of delivery of a simulated controlled substance rather than delivery by offer to sell. We overrule this point of error.

I would follow the rule set forth in *Vivanco*. I would overrule appellant's second point of error.

The majority states that appellant was subject to conviction under the delivery of controlled substance act and delivery of a simulated controlled substance act. They further state that since there are conflicts between the statutes as to elements of proof and penalty provisions, the statutes are in pari materia and appellant should have been charged with the more specific offense of delivery of a simulated controlled substance. I disagree and would affirm the trial court's judgment.